24 F.3d 249
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Bashar SATOOT, Petitioner,
v.
UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 93-70497.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 11, 1994.*
Decided May 16, 1994.
 
 Before: HUG, D.W. NELSON, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Bashar Satoot, a native and citizen of Syria, petitions pro se for review of the Board of Immigration Appeals' ("BIA") dismissal of his appeal from an immigration judge's ("IJ") decision finding him deportable as charged and denying his (1) application for asylum and withholding of deportation, and (2) alternative application for voluntary departure. We have jurisdiction under 8 U.S.C. Sec. 1105a(a), and we deny the petition for review.
 
 
 3
 * Asylum
 
 
 4
 This court reviews for abuse of discretion the BIA's denial of asylum under section 208(a) of the Immigration and Nationality Act ("Act"). Berroteran-Melendez v. INS, 955 F.2d 1251, 1255 (9th Cir.1992). The BIA's factual findings, including credibility findings as to whether an alien had a well-founded fear of persecution, are reviewed for substantial evidence. Id. We will reverse the BIA's decision only if the alien's evidence was such that no reasonable factfinder could fail to conclude that the requisite fear of persecution existed. Abedini v. INS, 971 F.2d 188, 191 (9th Cir.1992).
 
 
 5
 Section 208(a) of the Act authorizes the Attorney General, in her discretion, to grant asylum to an alien who is a "refugee." 8 U.S.C. Sec. 1158(a). A "refugee" is an alien who is unable or unwilling to return to his or her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Id. Sec. 1101(a)(42).
 
 
 6
 The alien bears the burden of establishing eligibility for asylum. See 8 C.F.R. Sec. 208.5 (1989); Berroteran-Melendez, 955 F.2d at 1255. To establish a well-founded fear of persecution, the alien must show both a subjectively genuine and objectively reasonable fear. Berroteran-Melendez, 955 F.2d at 1256. The alien's "candid, credible and sincere" testimony showing a genuine fear of persecution satisfies the subjective component. See Blanco-Comarribas v. INS, 830 F.2d 1039, 1042 (9th Cir.1987). The objective component requires "credible, direct, and specific evidence in the record, of facts that would support a reasonable fear" that the alien faces persecution. Rodriguez-Rivera v. INS, 848 F.2d 998, 1002 (9th Cir.1988) (per curiam) (quotations and emphasis omitted).
 
 
 7
 Satoot contends that the BIA abused its discretion by finding his testimony not credible and thus concluding that Satoot failed to present sufficient evidence to meet his burden of proving a well-founded fear of persecution based on his religion, political opinion, or membership in a particular social group. See 8 C.F.R. Sec. 208.5; Berroteran-Melendez, 955 F.2d at 1255. We disagree.
 
 
 8
 The record shows that substantial evidence supports the BIA's adverse credibility findings. First, there were numerous inconsistencies between Satoot's testimony and his application for asylum.[1] See Berroteran-Melendez, 955 F.2d at 1256 (IJ's adverse credibility findings supported by discrepancies between alien's testimony and asylum application). The most significant inconsistency was the fact that Satoot testified that he had been detained and questioned by Syrian security officers, but omitted this incident from his asylum application.[2] Satoot failed to offer a reason for this inconsistency to the IJ or BIA.[3] See id.
 
 
 9
 Second, Satoot's testimony was contradicted by the testimony of other witnesses at the deportation hearing. Satoot testified that he was never physically abusive to his girlfriend, Sharon Magnan Badaoui, but his testimony was contradicted by Badaoui's testimony and that of her sister, Lynne Magnan Donovan. Both Badaoui and Donovan described an incident in which Satoot struck Badaoui in the face.[4] Moreover, although Satoot testified that he never threatened Badaoui or her family, his testimony was contradicted by Donovan, who stated that she had observed Satoot making intimidating gestures outside Badaoui's place of employment.
 
 
 10
 Given the inconsistencies and contradictions in Satoot's testimony, substantial evidence supports the BIA's finding that Satoot's testimony was not credible. See Berroteran-Melendez, 955 F.2d at 1257. Because Satoot thus failed to present "candid, credible and sincere testimony" demonstrating a genuine fear of persecution, he failed to meet the subjective component of the well-founded fear standard. See id. at 1257-58. Satoot therefore failed to establish eligibility for asylum, and the BIA did not err by dismissing Satoot's appeal of the IJ's decision denying his application for asylum.[5] See id. at 1255-56.
 
 II
 Voluntary Departure
 
 11
 Satoot contends that the BIA erred by denying his application for voluntary departure because it misconstrued the nature of his relationship with Badaoui. We disagree.
 
 
 12
 Because the BIA's decision to grant voluntary departure is discretionary, this court "may examine only whether the [BIA] actually exercised its discretion and whether it did so in an arbitrary and capricious manner." Abedini, 971 F.2d at 193. Where, as here, the BIA does not purport to exercise its discretion, but merely concludes the IJ did not err by exercising her discretion, this court reviews the IJ's decision. See Campos-Granillo v. INS, 12 F.3d 849, 852 (9th Cir.1994).
 
 
 13
 Under 8 U.S.C. Sec. 1254(e), the attorney general has the authority to grant voluntary departure in lieu of deportation. The attorney general has discretion to grant such relief where the alien shows that he is a person of good moral character for at least five years preceding the request for voluntary departure. 8 U.S.C. Sec. 1254(e). The attorney general has delegated to immigration judges the authority to grant voluntary departure provided the alien meets the statutory requirements, has the ability to depart the United States at his own expense, and shows equities meriting such treatment. See 8 C.F.R. Sec. 244.1; Abedini, 971 F.2d at 192-93. In exercising her discretion to grant or deny voluntary depature, an IJ must "weigh favorable and unfavorable factors by 'evaluat[ing] all of them, assigning weight or importance to each one separately and then to all of them cumulatively.' " Campos-Granillo, 12 F.3d at 852 (quoting In re Edwards, Int.Dec. 3134 (BIA 1990)).
 
 
 14
 Here, the IJ properly found that Satoot was statutorily eligible for relief because he testified that he had sufficient funds to finance his departure and met the requirements for a showing of good moral character. See 8 U.S.C. Secs. 1101(f), 1254(e); 8 C.F.R. Sec. 244.1. In analyzing whether to grant Satoot relief as a matter of discretion, the IJ reviewed the relevant favorable and unfavorable factors, afforded each factor a weight, and weighed the factors against one another.[6] See Campos-Granillo, 12 F.3d at 852. The IJ found that the unfavorable factors outweighed the favorable ones and declined to exercise her discretion on Satoot's behalf.
 
 
 15
 Satoot argues that the IJ afford too much weight to Satoot's violent, anti-social behavior towards Badaoui and not enough weight to the fact that he allegedly had a child with Badaoui who was an American citizen. The IJ, however, did not base her determination solely on either of these factors. Cf. Campos-Granillo, 12 F.3d at 852. Moreover, the record contains ample support for the IJ's finding that Badaoui was violent towards Badaoui, and the IJ was required to consider this factor in her review of the equities. See id. at 852-53. As to Satoot's parental status, the IJ considered this factor but afforded it no weight because (1) there was contradictory evidence as to who was the child's father and (2) under California law, Badaoui's husband was presumed to be the father.[7]
 
 
 16
 Because the IJ fully analyzed the positive and negative factors, we conclude that she acted within her discretion by denying Satoot's application for voluntary departure. See id. at 852. Thus, the BIA's affirmance of the IJ's denial of voluntary departure based on the IJ's reasoning was neither arbitrary nor capricious. See Abedini, 971 F.2d at 193.
 
 
 17
 PETITION FOR REVIEW DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4. Accordingly, Satoot's request for oral argument is denied
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 During his deportation proceeding, Satoot testified that he (1) served two years and nine months in the Syrian military, and (2) was employed for four years in the United States. On his asylum application, however, Satoot stated that he (1) completed his four years in the Syrian military, and (2) was unemployed and had never worked in this country
 
 
 [2]
 In his brief, Satoot states: "I was held against my will and on several occasions I was tortured by being tied down on my back and beaten on the bottom of my feet until they swelled." Satoot failed to offer this evidence before either the IJ or the BIA. We therefore decline to consider it. See Acewicz v. INS, 984 F.2d 1056, 1059 (9th Cir.1993) (court of appeal review limited to basis of BIA's decision)
 
 
 [3]
 With respect to the inconsistency regarding Satoot's employment history in the United States, Satoot testified that he did not specify his employment on his application for asylum because he did not have a work permit and was paid "under the table because of the immigration."
 
 
 [4]
 Satoot attached to his reply brief evidence which he claims contradicts Badaoui and Donovan's testimony about this incident. The evidence consists of a police report in which the officers on the scene reported that Badaoui had no visible injuries and documents indicating that the charges against Satoot later were dismissed. Again, because this evidence was never presented to the IJ or BIA, we decline to consider it. See Acewicz, 984 F.2d at 1059
 
 
 [5]
 Because Satoot did not satisfy the lower burden of proof required for asylum, he failed to satisfy the "clear probability" standard of eligibility required for withholding of deportation. See Acewicz, 984 F.2d at 1062. Thus, the BIA did not err by denying Satoot's request for withholding of deportation. See id
 
 
 [6]
 As unfavorable factors, the IJ afforded substantial weight to Satoot's (1) violent, anti-social behavior towards Badaoui, (2) violation of immigration laws, and (3) limited payment of child support to Badaoui. The IJ afforded little weight to the facts that Satoot (1) filed his asylum application after he was apprehended by authorities, and (2) admitted to drug use, but had only been charged, not convicted, of selling drugs
 As favorable factors, the IJ weighed Satoot's (1) five-and-one-half year residence in the United States, and (2) approximately four-year employment history in this country. The IJ gave no weigh to the fact that Satoot claimed to be the father of Badaoui's child, a United States citizen.
 
 
 [7]
 Satoot attached to his reply brief copies of court documents and a revised birth certificate naming Satoot as the father of Badaoui's child. Again, because Satoot did not present this evidence to the IJ or BIA, we decline to consider it. See Acewicz, 984 F.2d at 1059