**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

AHMAD QASEMI,
<u>Petitioner-Appellant,</u>

v.

WILLIAM CARROLL, District Director,
Washington District Office,
Immigration & Naturalization

Service,
<u>Respondent-Appellee.</u>

No. 95-6480

WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS AND
URBAN AFFAIRS,
<u>Amicus Curiae.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-95-59-A)

Argued: March 7, 1996

Decided: May 1, 1996

Before RUSSELL and WILKINS, Circuit Judges, and CHAPMAN,
Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Enid Gonzalez Aleman, Washington, D.C., for Appellant.
Karen Theresa Grisez, FRIED, FRANK, HARRIS, SHRIVER &

JACOBSON, Washington, D.C., for Amicus Curiae. Martin Henry Sachs, Special Assistant United States Attorney, Alexandria, Virginia, for Appellee. **ON BRIEF:** Douglas W. Baruch, FRIED, FRANK, HARRIS, SHRIVER & JACOBSON, Washington, D.C., for Amicus Curiae. Helen F. Fahey, United States Attorney, Dennis E. Szybala, Assistant United States Attorney, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Ahmad Qasemi filed this petition for a writ of habeas corpus seeking review of the order of the Board of Immigration Appeals (BIA) affirming the decision of the immigration judge and denying him asylum under the Immigration and Naturalization Act, 8 U.S.C.A. § 1158 (West Supp. 1996). We affirm the district court's denial of this petition.

I.

Ahmad Qasemi is a citizen of Afghanistan and a member of the Shia branch of the Muslim religion. During his early adulthood, he worked with his father in the family business, selling sewing machines and other imported goods. In 1979, Afghanistan fell under the rule of a Soviet-backed, communist regime. Many Islamic Afghani citizens participated in a "jihad" or "holy war" intended to liberate their country from communist occupation. Qasemi was among those supporting the resistance. His participation was limited at first to providing supplies to the Harrakat-Islami, a mujaheddin faction comprised of Shia Muslims.

Sometime during 1983 or 1984, Qasemi was seized by the KHAD, the communist-backed Afghani government's secret police. The

2

KHAD held and interrogated Qasemi for thirty days. From 1984 to 1989, Qasemi contends he served as a Harrakat-Islami freedom fighter, procuring weapons and transporting supplies. In 1985, Qasemi's father was captured and interrogated by the KHAD. Qasemi's father thereafter went to Pakistan with Qasemi's wife and daughter. Qasemi remained in Afghanistan as a freedom fighter.

In 1988, the Soviet troops withdrew from Afghanistan and the communist regime crumbled. After their departure, certain sects of the mujaheddin resistance forces began attacking other sects, with the primary division being between members of the Sunni and Shia sects of Islam. Qasemi contends that while he was on a supply mission, the core of his group was violently attacked by a group of Hezb-e-Islami, a rival Sunni mujaheddin faction. Twelve members of Qasemi's group were killed in that attack. Subsequently, Qasemi's father legally emigrated to the United States, and Qasemi went to Pakistan to join his family.

While living in Pakistan, Qasemi began receiving threatening letters from the Hezb-e-Islami. The letters criticized Qasemi for becoming westernized and for having family members go to the United States. The letters attempted to extort large sums of money from Qasemi through threats against him and his family of kidnapping and death. Qasemi purchased forged passports, and he left with his family for the United States.

The entire family was placed in exclusion proceedings in 1989 upon their attempt to enter the United States from Pakistan using forged passports. Qasemi and his family conceded excludibility but immediately filed an application for asylum and withholding of deportation. The asylum application stated Qasemi's belief that his life would be in danger if he returned to Pakistan or Afghanistan. After a hearing, an immigration law judge denied Qasemi's application, and the BIA affirmed this decision on appeal. Qasemi thereafter filed the present habeas corpus action in district court seeking review of the BIA's decision. The district court denied his petition, and this appeal followed.

II.

A grant of asylum is discretionary. 8 U.S.C.A. § 1158(a) (West Supp. 1996). To be eligible for asylum, Qasemi must meet the defini-

3

tion of refugee--that is, a person who is unable to return to his country because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.A.§ 1101(a)(42)(A) (West Supp. 1996). Qasemi must show that his fear of persecution stems directly from one or more of these five enumerated categories. Huaman-Cornelio v. Board of Immigration Appeals , 979 F.2d 995, 999-1000 (4th Cir. 1992). If an alien presents concrete facts of a well-founded fear of persecution but those facts disclose that the alien "fears retribution over purely personal matters or general conditions of upheaval and unrest," the alien is not eligible for asylum. Id. at 1000.

The well-founded fear of persecution analysis consists of a subjective and objective component. INS v. Cardoza-Fonesca, 480 U.S. 421, 430-31 (1987). The subjective part requires that Qasemi present "`candid, credible, and sincere testimony' demonstrating a genuine fear of persecution." Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir. 1992) (quoting Blanco-Comarribas v. INS, 830 F.2d 1039, 1042 (9th Cir. 1987)). To satisfy the objective part, Qasemi must show specific, concrete facts that would lead a reasonable person in his circumstances to fear persecution. Huaman-Cornelio, 979 F.2d at 999 (quoting M.A. A26851062 v. INS, 899 F.2d 304, 311 (4th Cir. 1990) (en banc)).

Qasemi contends the BIA erred in denying his asylum application by applying the wrong standard. According to Qasemi, the BIA erroneously required him to show to a certainty that his persecutors were motivated by one or more of the five enumerated categories. The correct standard is that Qasemi must establish only that he held a well-founded fear that he might, or could be, persecuted on account of one of the five enumerated categories. Unlike Qasemi, we believe the BIA applied the correct standard. In denying Qasemi's application, the BIA noted that Qasemi could not reasonably fear persecution from the Soviet-backed Afghani government because that communist government was deposed. To the extent Qasemi based his application on allegations of persecution in Pakistan from the Hezb-e-Islami, the BIA did not agree that Qasemi's evidence satisfied the objective part of the analysis because a reasonable person would not fear persecution as a result of race, religion, nationality, membership in a particu-

4

lar social group, or a political opinion. Hence, the BIA clearly applied the correct standard.

The only remaining question, therefore, is whether the BIA's factual findings and conclusion are supported by the evidence. We review de novo the BIA's conclusion that Qasemi failed to meet the requirements of asylum eligibility; however, we will not reverse the BIA's factual findings in support of that conclusion unless the evidence not only supported a contrary conclusion, but compelled it. Chen Zhou Chai v. Carroll, 48 F.3d 1331, 1338 (4th Cir. 1995). The evidence presented by Qasemi must be "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992).

Based on testimony in the record, the BIA found the following facts relevant to Qasemi's asylum claim: (1) Qasemi was not in danger of persecution from a communist Afghani government because that government was no longer in power;* (2) to the extent Qasemi's asylum claim was based upon a fear of persecution from the Hezb-e-Islami, a rival mujaheddin group, Qasemi's group was now too small and insignificant to attract the attention of the Hezb-e-Islami; (3) the Hezb-e-Islami sent threatening letters to Qasemi while he was in Pakistan merely to extort money from Qasemi to finance its operations, and not to persecute Qasemi based upon one of the five enumerated categories. Based upon these findings, the BIA concluded that Qasemi was not entitled to asylum.

_____

*Qasemi appears to take issue with this finding, arguing that the BIA erroneously stacked the evidence against him by taking judicial notice of a report documenting that the communist government had fallen. Qasemi contends that this same report contains detailed evidence that the various mujaheddin groups were fighting among themselves, yet the BIA failed to take judicial notice of these sections of the report. Hence, Qasemi contends that the BIA did not actually weigh the evidence to reach its decision. We reject this argument because regardless of whether the BIA took this evidence from the report at issue, it clearly stated it had considered evidence that the mujaheddin groups were fighting among each other.

5

Qasemi can point to nothing in the record that would compel us to reach a contrary conclusion. He argues that the BIA required too much by way of proof of his persecutor's motives. But, Qasemi bears the burden of establishing his eligibility for asylum. 8 C.F.R. § 208.13(a) (1995). As part of that proof, Qasemi must establish that he has a well-founded fear of persecution because of one of the five enumerated categories. Qasemi did not produce any of the threatening letters he allegedly received. Although he testified that the Hezb-e-Islami sent these letters in an attempt to extort money from him, this evidence is not specific or concrete enough to establish Qasemi's well-founded fear of persecution "with the degree of clarity necessary to permit reversal of a BIA finding to the contrary." Elias-Zacarias, 502 U.S. at 483. The mere existence of a political or religious motive underlying the Hezb-e-Islami's actions does not necessarily render those acts persecution on account of Qasemi's political or religious views. See id. at 482.

We find no error in the BIA's decision; hence, the district court's order denying Qasemi's petition for a writ of habeas corpus is

AFFIRMED.

6